**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

KEVIN DEWITT SKAGGS,

      Petitioner,

      v.                          **Case No. 16-3081-JAR**

SAM CLINE, ET AL.,

      Respondents.

## MEMORANDUM AND ORDER

This matter comes before the Court on Petitioner Kevin Dewitt Skaggs' Petition for Writ of Habeas Corpus (Doc. 1), Respondents' Answer and Return (Doc. 12), Skaggs' Amended Traverse (Doc. 22), Skaggs' Motion for Evidentiary Hearing (Doc. 25), and the state court records. Skaggs, through counsel, alleges ten grounds for relief, including ineffective assistance of counsel, prosecutor misconduct, and trial court errors. This matter is fully briefed, and the Court is prepared to rule. After a careful review of the record and the arguments presented, the Court denies the request for an evidentiary hearing and the petition for federal habeas corpus relief.

## I.    Legal Standards

### A.    Federal Habeas in General

Federal courts review a state prisoner's challenges to state-court proceedings pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA").[1] The AEDPA requires that federal courts give "significant deference to state court decisions" adjudicated on the merits.[2]

---

[1] *Lockett v. Trammel*, 711 F.3d 1218, 1230 (10th Cir. 2013).

[2] *Id.*

Under 28 U.S.C. § 2254(d), a federal court may not grant habeas relief on any claim adjudicated in state court unless the petitioner establishes the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[3]

A state court's decision is "contrary to" an established federal law if the state court reaches a different result than the Supreme Court has "done on a set of materially indistinguishable facts" or "if the state court applies a rule different from the governing law" set forth in Supreme Court cases.[4] A decision is an "unreasonable application" of clearly established federal law if a "state court correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies it to the facts of [a petitioner's] case."[5] Additionally, "an unreasonable application may occur if [a] state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply."[6] Courts employ an objective standard in determining what is unreasonable.[7]

A federal court must presume the state court's factual findings, including credibility findings, are correct in the absence of clear and convincing evidence to the contrary.[8] The law "stops just 'short of imposing a complete bar on federal court relitigation of claims already

---

[3] *Williams v. Trammel*, 782 F.3d 1184, 1191 (10th Cir. 2015) (quoting 28 U.S.C. § 2254(d)(1)-(2)).

[4] *Bell v. Cone*, 535 U.S. 685, 694 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

[5] *Id.* (citing *Taylor*, 529 U.S. at 407–08).

[6] *House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008).

[7] *Bell*, 535 U.S. at 694 (citing *Taylor*, 529 U.S. at 409–10).

[8] 28 U.S.C. § 2254(e)(1).

rejected in state proceedings.'"[9]  Courts may not issue a writ of habeas corpus if "'fairminded jurists could disagree' on the correctness of the state court's decision."[10]  Even when a petitioner has a strong case for relief, this "does not mean that the state court's contrary conclusion was unreasonable."[11]

### B.    Evidentiary Hearing

When deciding whether to grant an evidentiary hearing, "a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the petitioner to federal habeas relief."[12]  "Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate."[13]  If the record refutes the petitioner's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.[14]  If a habeas petitioner has failed to develop the factual basis for his claim in state court, the district court is precluded from granting an evidentiary hearing unless the petitioner establishes that the claim relies on a new, retroactive rule of constitutional law or a factual predicate that could not have been discovered except by due diligence.[15]

---

[9] *Frost v. Pryor*, 749 F.3d 1212, 1223 (10th Cir. 2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

[10] *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

[11] *Id.* at 102.

[12] *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

[13] *Id.*

[14] *Id.*

[15] 28 U.S.C. § 2254(e)(2); *Littlejohn v. Trammell*, 704 F.3d 817, 857 (10th Cir. 2013).

## II.    Factual Background

The Court presumes the state court's factual determinations are correct, unless the petitioner rebuts the presumption with clear and convincing evidence.[16]  Skaggs has not proffered any evidence to meet that burden.  The Court thus adopts the following facts from the Kansas Court of Appeals' opinion affirming his conviction.[17]

> B.S., an 11-year-old girl, testified she was sexually assaulted on several occasions when she stayed overnight with Skaggs during a 2-month period from November 21, 2004 through January 21, 2005.[18]  According to B.S., Skaggs penetrated her vagina with his fingers and penis and had her engage in oral sex.  A subsequent medical examination of B.S. "was consistent with sexual abuse or assault."  At trial, Skaggs denied the allegations and only admitted to giving B.S. a back rub on his bed and then sleeping with her.
>
> Evidence from Skaggs' computer demonstrated numerous forays into child sexual abuse websites and chat rooms where, among other things, he obtained images of child sexual abuse.  B.S. testified that Skaggs also had used her mother's computer to show B.S. videotapes of child sexual abuse.  The videotapes were recovered from the mother's computer and admitted into evidence at trial, but they are not in the record on appeal.  The computer

---

[16] 28 U.S.C. § 2254(e)(1); *Saiz v. Ortiz*, 392 F.3d 1166, 1175 (10th Cir. 2004).

[17] *State v. Skaggs*, No. 100,201, 2009 WL 2436671 (Kan. Ct. App. Aug. 7, 2009), *rev. denied* Sept. 7, 2010.

[18] The Kansas Court of Appeals' opinion did not describe the events of January 21, 2005 in detail, but it is undisputed that B.S. went to a basketball game with Skaggs on that day and spent the night at his place.  The following day, B.S.'s mother asked B.S. if anyone had touched her inappropriately.  B.S. testified at trial about the touching that took place on January 21, 2005, as follows:

> A.  Stuff like him putting his mouth on my vagina.
>
> Q.  What were you doing while he was doing that?
>
> A.   Putting my mouth on his penis.
>
> Q.  Okay.  And do you remember calling that a specific name?
>
> A.  69.
>
> Q.  And when you say putting his mouth on your vagina …what was he actually doing?
>
> A.  He said it was called eating a person out and licking somebody's vagina.

R. Vol. XI at 386:25–387:1–10.  B.S.'s mother took B.S. to the hospital on January 22, 2005, and reported the sexual abuse to the authorities.

> evidence spanned a 5-month period from August 25, 2004 through January 21, 2005.
>
> The State charged Skaggs with three counts of rape, two counts of aggravated criminal sodomy, two counts of sexual exploitation of a child (one count based on images recovered from Skaggs' computer and the other count based on images recovered from the computer of B.S.'s mother), and one count of promoting obscenity to minors.
>
> At trial in June 2007, Skaggs' defense included a general denial that he sexually assaulted B.S., and a general denial that he knowingly possessed the images and other evidence of child sexual abuse recovered from his computer. Skaggs suggested the obscene material was placed on his computer by hackers through the use of viruses or by acquaintances who knew his password and user name, franchise001. The jury convicted Skaggs on all but one aggravated criminal sodomy count.[19]

On February 22, 2008, the district court sentenced Skaggs to an imprisonment term of 310 months (two consecutive 155-month terms for the first two Rape counts, accompanied by concurrent terms spanning 155 months to 12 months for the other counts) and 36 months post-release supervision.

Skaggs directly appealed his conviction to the Kansas Court of Appeals ("KCOA"), raising claims of prosecutorial misconduct and district court error. On August 7, 2009, the KCOA affirmed Skaggs' convictions. On September 7, 2010, the Kansas Supreme Court denied Skaggs' petition for review.

On August 23, 2011, Skaggs filed a motion for post-conviction relief under Kan. Stat. Ann. § 60-1507 in the District Court of Leavenworth County (the "1507 Motion"). The district court received three days-worth of evidence and argument and took the matter under advisement. On August 29, 2012, the district court issued a written order denying the 1507 Motion. The

---

[19] *Skaggs*, 2009 WL 2436671, at *1.

KCOA affirmed that decision on March 21, 2014, and the Kansas Supreme Court denied review on April 29, 2015.[20]

On April 11, 2016, Skaggs filed this habeas petition, alleging ten grounds for relief. Respondents urge denial of habeas relief because Skaggs cannot demonstrate any constitutional errors or that the state court decisions failed to comport with clearly established federal law.

## III.   Analysis

### A.   Motion for Evidentiary Hearing

Skaggs requests a hearing with respect to Grounds One and Three of his habeas petition. He claims expert testimony regarding the amylase found in B.S.'s underwear (Ground One), and why the findings from B.S.'s two medical exams cannot be reconciled (Ground Three), would aid this Court in resolving the complex scientific and medical issues underlying his claims for habeas relief.  He proffers that his amylase expert could explain: 1) the various sources of amylase; 2) the scientific testing procedures available to determine the source of amylase; and 3) how the State's expert should have been cross-examined by a reasonably competent attorney.[21]  He conclusorily claims technology now exists that would allow his expert to test and conclusively prove the source of amylase.[22]

Federal habeas review, however, is "limited to the record that was before the state court that adjudicated the claim on the merits."[23]  Indeed, § 2254(d)(2) bases relief on review of "the

---

[20] *Skaggs v. Kansas*, No. 108,644, 2014 WL 1193324 (Kan. Ct. App. Mar. 21, 2014), *rev. denied* Apr. 29, 2015.

[21] Doc. 25, ¶ 5.

[22] *Id.* at 3, n1.

[23] *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011).

facts in light of the evidence presented in the State court proceeding."[24]  And under § 2254(e)(2), a federal habeas court "shall not hold an evidentiary hearing on" a claim unless:

> (A) the claim relies on—
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Skaggs invokes no new rule of constitutional law.  Nor does he provide a factual predicate to establish this new evidence "could not have been previously discovered through the exercise of due diligence."  Skaggs' counsel made a conscious decision not to challenge these issues with expert testimony at trial.[25]  The Court does not need the assistance of a microbiologist to determine whether trial counsel's decision not to call one at trial was a reasonable trial strategy.[26]  Courts routinely determine what constitutes reasonable trial strategies.

In any case, Skaggs did present an amylase expert, Dean Stetler, a Ph.D. in microbiology, at his sentencing hearing in an improper attempt to refute the findings of the State's DNA expert.

---

[24] 28 U.S.C. § 2254(d)(2).

[25] R. Vol. XVIII at 100:2–12 ("Q:  what [was] your reasoning . . . for not calling [defense DNA expert] as a witness?  A:  The Government's evidence was — at best, it wasn't dispositive of the case. . . .There was no evidence upon which they were going to assert that there was a DNA match between any of the physical objects found or collected during the criminal investigation to tie the defendant to a sexual event with the victim."); 177:12–13 ("it's a subject [whether to attack the medical examiner's finding that normal follow-up exam did not change her conclusion of sexual assault] over which I thought long and hard before I made that decision.").

[26] *See infra* discussion in Sections III.B.1.a. and c.

This Court agrees with the KCOA's conclusion that Skaggs exaggerates the conflict between the two amylase experts. In affirming Skaggs' conviction, the KCOA stated:

> Dr. Stetler "would have expected" that, if someone other than B.S. had left behind the enzymes, DNA from such a person would have been recovered as well. Swanson allowed a possibility that, even if someone other than B.S. had left behind the enzymes, DNA from such person might not be recovered.[27]

And even if technology now exists that would allow an expert to test and conclusively prove the source of amylase (*i.e.*, that it was B.S.'s urine), that information will not change the trial's outcome because Skaggs' conviction was not based on the State's benign DNA evidence, but on other overwhelming evidence.[28]

As for a medical expert to counter that B.S.'s physical exams were consistent with sexual assault, Skaggs did not present such expert testimony despite raising this issue on collateral appeal and having an evidentiary hearing. Skaggs offers no reason for his failure to do so. Under these circumstances, the Court denies Skaggs' motion for an evidentiary hearing on Grounds One and Three.

## B. Merits of Habeas Petition

The Court divides Skaggs' ten grounds for relief into four categories: 1) ineffective assistance of counsel, 2) prosecutorial misconduct, 3) trial court errors, and 4) cumulative error.

### 1. Ineffective Assistance of Counsel (Grounds One through Four)

The Supreme Court set forth the standard for the review of ineffective assistance of counsel claims in *Strickland v. Washington*.[29] *Strickland* requires a petitioner to show both that

---

[27] *Skaggs*, 2009 WL 2436671, at *2.

[28] *See infra* Merits of Habeas Petition discussion.

[29] 466 U.S. 668 (1984).

his counsel's performance "fell below an objective standard of reasonableness" and that "the deficient performance prejudiced the defense."[30] Failure under either prong is dispositive.[31]

In reviewing counsel's performance, courts presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.[32] "To be deficient, the performance must be outside the wide range of professionally competent assistance. In other words, it must have been completely unreasonable, not merely wrong."[33] A petitioner bears a heavy burden of overcoming the presumption that counsel's actions were sound trial strategy.[34] This burden increases doubly at the § 2254 proceeding level as federal courts defer not only to the attorney's decision in how to best represent a client, but also to the state court's determination that counsel's performance was not deficient.[35]

Skaggs alleges his trial counsel, Terrence Lober, provided ineffective assistance in four different ways. The KCOA rejected all four claims, finding any deficiencies in Lober's performance were insufficiently prejudicial to deny Skaggs a fair trial. Skaggs now argues that the KCOA's decision was based on an unreasonable determination of the facts in light of the evidence presented and an unreasonable application of *Strickland*. The Court disagrees.

### a. Exculpatory Evidence on Amylase Stain (Ground One)

Skaggs maintains Lober was ineffective when he failed to present evidence through cross-examination of the State's DNA expert (Barbara Crim-Swanson) or by calling his own expert to testify that Skaggs had been excluded as a possible contributor to the amylase found in

---

[30] *Id*. at 687–88.

[31] *Id.* at 697.

[32] *Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011).

[33] *Id.* (internal quotations and citations omitted).

[34] *Id*.

[35] *Id*.

B.S.'s underwear.  He points out that his original counsel, Gary Fuller, had recognized the need

for a DNA expert and had obtained the services of Dr. Dean Stetler; yet Lober never contacted

Dr. Stetler, presented exculpatory evidence, or objected to inadmissible evidence or improper

arguments.  The KCOA rejected this claim of error with the following, pertinent analysis:

> Decisions on whether to call certain witnesses are strategic in
> nature and generally within the exclusive province of the attorney.
> *Bledsoe v. State*, 283 Kan. 81, 102–03, 150 P.3d 868 (2007). . . .[36]

> Swanson's report conclusively eliminated Skaggs as a contributor
> to the amylase found in B.S.'s underwear.  A defense expert's
> proposed testimony—that DNA results did not link Skaggs to the
> amylase —would have been cumulative.  There was no
> incriminating DNA evidence to rebut.  The jury had Swanson's
> report stating in plain English that Skaggs had been excluded as a
> contributor of the DNA found in the amylase, and the report was
> explained to the jury through Swanson's testimony.  The DNA
> evidence was favorable to Skaggs despite the fact that Swanson's
> testimony did not conclusively exonerate him.[37]

> Skaggs' attorney's cross-examination of Swanson established that
> amylase can be attributed to a number of nonsexual bodily fluids
> other than saliva. This testimony necessarily includes urine as a
> bodily fluid.  The fact that counsel did not separately ask about
> urine did not render his performance inadequate.[38]

> There was nothing unreasonable about counsel's decision not to
> call an expert witness to testify to helpful DNA evidence as the
> prosecutor had other, more damning evidence that Skaggs'
> attorney wished to focus on at trial.  Counsel undertook a
> reasonable trial strategy in this regard.[39]

> Finally, Skaggs' attorney's failure to object to the prosecutor's
> statements about the amylase during closing argument does not
> constitute ineffective lawyering.  Prosecutors are afforded wide
> latitude in making their closing arguments.  *State v. King*, 288 Kan.

---

[36] *Skaggs v. Kansas*, No. 108,644, 2014 WL 1193324, at *8 (Kan. Ct. App. Mar. 21, 2014), *rev. denied* Apr. 29, 2015.

[37] *Id*.

[38] *Id*. at *9.

[39] *Id*.

333, 351, 204 P.3d 585 (2009). . . . The prosecutor's argument strayed close to the edge of what would be a reasonable inference from the evidence, but there was a modicum of evidence to support it.[40]

The Court finds the above analysis consistent with the *Strickland* standard for ineffective assistance of counsel. The Court agrees with the KCOA that Lober's performance regarding the amylase issue did not deny Skaggs a fair trial. The fact that Skaggs' original counsel retained a DNA expert does not render Lober's performance constitutionally ineffective. "It is not enough to show that other lawyers might have employed different trial strategies."[41] In any criminal case, there usually are multiple approaches to diffusing bad evidence or shaping favorable evidence to convince a jury to acquit. Because the DNA report stated in plain English that Skaggs had been excluded as a contributor of the DNA found in the amylase, Lober's decisions regarding the amylase evidence (*i.e.*, not calling a defense DNA expert, minimal cross-examination, and not objecting to prosecutor's inferences) were all reasonable professional judgments. Ground One provides no basis for federal habeas relief.

### b. Testimony Regarding Victim's Credibility (Ground Two)

Second, Skaggs maintains Lober provided ineffective assistance when he failed to object to or redact evidence that constituted impermissible bolstering of B.S.'s credibility or contained opinions as to his guilt. Skaggs challenges five statements: 1) B.S.'s mother's testimony that the social worker told her she felt that B.S. had been molested; 2) Officer Roach's statement that "Kevin has done some very bad things;"[42] 3) Detective Crim's comment to B.S. that she had every right to be angry with Skaggs and that he and Social and Rehabilitation Services ("SRS")

---

[40] *Id.*

[41] *Long v. State*, No. 102,909, 2011 WL 434014, at *2 (Kan. Ct. App. Jan. 21, 2011), *rev. denied* Apr. 25, 2011.

[42] R. Vol. XVII, Ex. 15.

would work to ensure that the abuse would not happen again; 4) the conversation between

Detective Crim and B.S.'s mother regarding what to expect from SRS and the charges that would

be filed; and 5) Detective Crim's statement to Skaggs during his interview that "[the police]

wouldn't have arrested [him] on these charges if [they] didn't believe [B.S.'s] story."[43]  The

KCOA rejected this claim of error, finding none of the challenged statements denied Skaggs a

fair trial.

　　　　The KCOA began by analyzing each challenged statement and concluded three of the

challenged statements were not improper: 1) Officer Roach's statement that "Kevin has done

some very bad things" was not a clear vouching for B.S.'s credibility but an attempt to calm a

distressed and anxious 11-year-old girl; 2) Detective Crim's comment to B.S. about working to

ensure the abuse would not happen again was also an attempt to calm and reassure an anxious

child and was not a straightforward expression of his belief in B.S.'s credibility; and 3) Detective

Crim's statements regarding the anticipated charges were not statements of opinions.  As for the

two remaining challenged statements, the KCOA stated they should have been redacted or

objected to at trial, but concluded:

> [T]he failure of Skaggs' attorney to redact or to object to these
> isolated statements on credibility during a lengthy trial was not so
> serious that Skaggs was denied a fair trial.  It simply cannot be said
> that, but for the admission of any of these statements, there was a
> reasonable probability that the outcome would have been
> different.[44]

　　　　Under *Strickland*, Skaggs must show that his attorney's deficient performance prejudiced

his defense.  The Court agrees with the state courts that these statements were not so prejudicial

---

[43] R. Vol. XVII, Ex. 27.

[44] *Skaggs v. Kansas*, No. 108,644, 2014 WL 1193324, at *7 (Kan. Ct. App. Mar. 21, 2014), *rev. denied*
Apr. 29, 2015.

as to deny Skaggs a fair trial.  First, these isolated statements were made during a six-day trial, where other voluminous testimony and evidence were presented.  Second, B.S. testified at trial, allowing the jury to form their own opinion about her credibility.  Third, Lober did not leave her account of events unchallenged.  He pointed out that testing showed none of Skaggs' DNA was found on B.S.'s items and vice versa.  But B.S.'s detailed account of the crimes, combined with the chat logs, indecent images found on Skaggs' computer, and evidence that Skaggs deleted materials from his computer within hours of learning B.S.'s mother became aware that Skaggs had sexual contact with B.S., overshadowed the admission of these statements.  Stated differently, the admission of these statements did not affect the outcome of the trial.  The Court finds the state courts' prejudice analysis consistent with the *Strickland* standard for ineffective assistance of counsel and their conclusion a reasonable determination of the facts.[45]  Ground Two thus fails as a basis for habeas relief.

### c. Normal Follow-up Examination (Ground Three)

Third, Skaggs maintains Lober provided ineffective assistance when he failed to cross-examine Dr. Kelly Sinclair about B.S.'s normal follow-up examination.  Dr. Sinclair examined B.S. twice—first on January 22, 2005, and then again on February 2, 2005.  In Dr. Sinclair's initial report, she noted an abnormal hymen, no posterior hymen, fleshy remnants of the anterior hymen, notching at the 8 o'clock position, bilateral notching, and white vaginal discharge.[46]  She concluded that physical findings were present and consistent with sexual abuse/assault by

---

[45] *Bledsoe v. Bruce*, 569 F.3d 1223, 1238 (10th Cir. 2009) (finding the Kansas Supreme Court's determination that counsel's failure to object to detective's credibility vouching did not prejudice petitioner given detective's statement was a very small part of the evidence presented and there was not a reasonable probability that but for the statement, petitioner would not have been found guilty).

[46] R. Vol. XVII, Exs. 2 at 6.

checking the applicable box on the form report.[47]  These findings were based on Dr. Sinclair's

visual observations of B.S.'s vagina without the aid of a colposcope, a magnifying camera.

A follow-up exam of B.S. ten days later included the use of a colposcope.  In her follow-up report, Dr. Sinclair wrote:

> I have reviewed the photographs taken in CARE Clinic which show a normal female genitalia with intact hymen. . . .  These photographs show a different exam finding than noted in our ER evaluation on Jan. 22.  Her ER examination showed her genital area to be more red and her vaginal opening more widely open.  Review of the photographs taken with the aid of colposcopy show the evolution of her examination.  My overall impression does not change given the child's history in addition to her physical examination. . . .  Her anogenital exam in CARE Clinic had normalized.  A normal exam does not conflict with the history given.[48]

At trial, Lober did not ask Dr. Sinclair about the follow-up findings.  At the hearing on Skaggs'

1507 Motion, Lober explained that he chose not to do so because his study of medical literature

indicated that a hymen, once damaged, is capable of regeneration, thus the normal follow-up

exam was not inconsistent with Dr. Sinclair's findings of sexual abuse.  Lober felt that attacking

Dr. Sinclair could have damaged Skaggs' defense.[49]

Skaggs points out that Dr. Sinclair had testified that prior to puberty, a hymen heals well

and "usually in about seven days to two weeks the notching will go away and just be left with a

little skin tag[]."[50]  He argues that Lober should have pointed out that: 1) there were no "skin

tags" present in the follow-up exam; 2) the colposcope exam is better than a naked-eye exam;

---

[47] *Id*. at 8.

[48] R. Vol. XII, Ex. I.

[49] R. Vol. XVIII at 182:18–20 ("I was willing to leave [Dr. Sinclair's testimony as the physical findings were consistent with sexual abuse and not conclusive] because . . . we were'nt going to make it any better, and we might have well made it much worse.").

[50] R. Vol. X at 68:1–5.

and 3) a hymen could not have regenerated in ten days, the time between the first and second

exam. Skaggs says eliciting this information would have allowed him to argue that a reasonable

doubt existed as to whether the first exam results were consistent with sexual abuse. The KCOA

rejected this claim of error because Dr. Sinclair directly addressed this point in her report by

stating: "[B.S.'s] anogenital exam in CARE Clinic had normalized. A normal exam does not

conflict with the history given." The KCOA also noted that:

> Pressing Dr. Sinclair further in cross-examination would have
> enabled her to emphasize her conclusion that the findings in her
> follow-up examination of B.S. were consistent with her original
> findings which were consistent with sexual abuse. The district
> court found that this was a reasonable trial strategy, and we find
> substantial support in the record for this conclusion.[51]

The Court finds the above analysis consistent with the *Strickland* standard for ineffective

assistance of counsel. Lober decided not to go head-to-head against Dr. Sinclair after he

reviewed medical literature which indicated that a hymen is capable of regeneration and based on

his experience with Dr. Sinclair before.[52] Instead, he challenged her testimony on cross by

obtaining her concurrence that she was "not saying to a reasonable medical certainty that [B.S.]

was in fact sexually abused"[53] and that the exam did not reveal the means of vaginal penetration

or by whom.[54] Under these circumstances, the record supports the KCOA's determination that

Lober's decision not to challenge Dr. Sinclair's follow-up findings was a reasonable trial

strategy. Ground Three thus provides no basis for habeas relief.

---

[51] *Skaggs v. Kansas*, No. 108,644, 2014 WL 1193324, at *10 (Kan. Ct. App. Mar. 21, 2014), *rev. denied* Apr. 29, 2015.

[52] R. Vol. XVIII at 181:18–25.

[53] R. Vol. X at 81:6–10.

[54] R. Vol. X at 86:8–21.

### d. Restraining Order Reference (Ground Four)

Fourth, Skaggs maintains Lober was ineffective when he failed to redact B.S.'s mother's interview statements with Detective Crim that she was worried about Skaggs' reaction to the sexual-abuse allegations because his ex-girlfriends had had restraining orders against him in the past. The KCOA rejected this claim of error with the following analysis:

> The Kansas Supreme Court has held that evidence of a restraining order admitted at trial was not K.S.A. 60–455 evidence because, in that case, the restraining order did not involve the violation of a criminal statute and because any wrongs giving rise to the restraining order were not the kind of behavior that would demonstrate a propensity to commit the crime at issue. *State v. Anthony*, 282 Kan. 201, 214, 145 P.3d 1 (2006).[55]
>
> Skaggs fails to show that the admission of this single, fleeting reference deprived him of a fair trial. Nothing about the statement indicates that a violation of a criminal statute preceded the restraining orders. Besides, evidence of an ex-girlfriend's complaint about domestic violence does not implicate a propensity to sexually abuse children. Finally, as determined in this court's opinion on his direct appeal in *Skaggs*, 2009 WL 2436671, at *15, the evidence at trial against Skaggs was overwhelming. It cannot be said that, but for Skaggs' attorney's failure to move to redact this statement, the outcome of the trial would have been different.[56]

The Court finds the above analysis not contrary to clearly established Supreme Court law. The restraining order reference did not suggest that Skaggs had a propensity to sexually abuse children, thus it did not constitute inadmissible evidence under K.S.A. § 60-455. Even if it did, it amounted to one sentence in a 12-minute recording, heard among six days of evidence. The prosecutor never emphasized or repeated that statement in examination or argument. The restraining order reference likely had no impact, and even if it did, it was not unduly prejudicial. Ground Four entitles Skaggs to no federal habeas relief.

---

[55] *Skaggs*, 2014 WL 1193324, at *10.

[56] *Id*. at *11.

## 2. Prosecutor Misconduct (Grounds Five and Eight)

A prosecutor's improper comments violate the Constitution only if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process."[57] A proceeding is fundamentally unfair under the Due Process Clause if it is "shocking to the universal sense of justice."[58] In making this determination, the court must examine the prosecutor's statements in context by looking "first at the strength of the evidence against the defendant and decid[ing] whether the prosecutor's statements plausibly could have tipped the scales in favor of the prosecution."[59]

### a. Improper Presentation and Characterization of DNA Evidence (Ground Five)

Skaggs maintains the prosecutor violated his due process rights when he deliberately misled the jury by presenting evidence that forensic test results linked Skaggs to the crimes. Specifically, Skaggs challenges one question the prosecutor asked of the State's DNA expert, Dr. Swanson: "And do you know when you did the analysis, *Amylase result, saliva result*, was that a strong result or a weak result? Do you know how much biological fluid that Amylase represented?"[60] The DNA expert answered: "Yes, we do an estimated quantification of how much is there. It was a concentration, more concentrated one to one solution, which can indicate saliva."[61] The expert went on to say that there were insufficient skins cells in the amylase to get

---

[57] *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Darden v. Wainwright*, 477 U.S. 168, 179-81 (1986) (quoting *Donnelly* and noting that it is helpful to place remarks in context); *Parker v. Matthews*, —— U.S. ——, 132 S.Ct. 2148, 2153 (2012) (identifying *Darden* as "clearly established Federal law" on prosecutorial misconduct).

[58] *United States v. Russell*, 411 U.S. 423, 432 (1973).

[59] *Fero v. Kerby*, 39 F.3d 1462, 1474 (10th Cir. 1994) (internal quotations and citations omitted).

[60] R. Vol. X at 322–23 (emphasis added).

[61] *Id*. at 323:3–5.

a DNA profile.  Based on this testimony, the prosecutor made the following argument during

closing:

> What was found in that underwear [B.S.] was wearing on January
> the 21st, 2005, the enzyme Amylase.  You heard Barbara Swanson
> testify that the enzyme Amylase was found in high concentration
> in human saliva.  Does it make sense you might find Amylase on
> her underwear?  You heard her testimony, you heard her interview
> with numerous accounts she gave that the defendant was
> performing oral sex on her . . . . And so is it any surprise that
> Amylase was found in her underwear?[62]

Skaggs argues the above question and argument mischaracterized the forensic evidence

because the State expert did not determine the source of the amylase.  The KCOA rejected this

claim of error, finding Swanson's testimony reasonably supported the possibility argued by the

prosecutor—that Skaggs performed oral sex on B.S. and thus the amylase found in B.S.'s

underwear could possibly contain Skaggs' DNA, but too few of Skaggs' cells existed in the

sample that Swanson tested to detect DNA.

The Court agrees with the KCOA that the prosecutor's argument "strayed close to the

edge of what would be a reasonable inference from the evidence." [63]  But there was evidence to

support the prosecutor's argument—amylase has many different sources, including saliva, and

B.S. testified that Skaggs performed oral sex on her.  And contrary to Skaggs' argument, the

prosecutor did not tell the jury that the scientific evidence proved that B.S.'s underwear

contained Skaggs' DNA.  Thus, Skaggs was not denied a fair trial due to this line of questioning

and argument.

---

[62] R. Vol. XII at 1032.

[63] *Skaggs v. Kansas*, No. 108,644, 2014 WL 1193324, at *9 (Kan. Ct. App. Mar. 21, 2014), *rev. denied*
Apr. 29, 2015.

### b.    Suggestion That Skaggs Destroyed Evidence (Ground Eight)

Skaggs next claims the prosecutor violated his due process rights when he suggested

Skaggs destroyed two items: a black shirt used to wipe his penis of seminal fluid and a floppy

disc containing an image of child pornography.  These suggestions were made during the

prosecutor's final closing arguments.  With respect to the shirt, the prosecutor reiterated that

child pornography had been deleted from Skaggs' computer at 10:45 p.m. on January 22, 2005,

and suggested Skaggs had gotten rid of the shirt at the same time by stating:

> The black t-shirt isn't found during the search warrant, apparently
> done away with as well [as the child pornography].  They look for
> one and the closest they could find is the gray shirt, which
> obviously wasn't his and too small.[64]

With respect to the floppy disk, the prosecutor said, "And where's the floppy?  Maybe it's with

that blue or black shirt…"[65]  The KCOA concluded:

> The prosecutor was within the considerable latitude allowed in
> discussing the evidence.  Moreover, assuming the prosecutor's
> brief comment was improper, Skaggs has failed to show the
> remark was gross or flagrant or the result of ill will.  Skaggs' claim
> of error as to [this] issue is without merit.[66]

The Court finds the KCOA's rejection of this claim of error was not contrary to, or an

unreasonable application of, clearly-established Supreme Court jurisprudence.[67]  The KCOA

weighed the prosecutor's suggestions against the strength of the evidence against the defendant.

B.S.'s detailed account of the crimes, combined with the disturbing chat logs, and indecent

---

[64] R. Vol. XII at 1064–65.

[65] *Id.* at 1069.

[66] *State v. Skaggs*, No. 100,201, 2009 WL 2436671, at *4 (Kan. Ct. App. Aug. 7, 2009), *rev. denied* Sept. 7, 2010.

[67] *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) ("The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)).

images found on Skaggs' computer heavily outweighed the suggestions. Moreover, these suggestions were only made in rebuttal to defense counsel's arguments.[68] Ground Eight thus provides no basis for federal habeas relief.

### 3. Trial Court Errors (Grounds Six, Seven, and Nine)

Skaggs next claims the trial court violated his due-process rights when it allowed the admission of evidence that rendered his trial fundamentally unfair. Ground Six challenges the admission of certain out-of-court statements made by B.S. and her mother to the social worker and the detectives. Ground Seven challenges the social worker's testimony that she used a special interview technique on B.S. "to ensure accuracy."[69] Ground Nine challenges the admission of various forensic computer evidence.

Generally, a state court's misapplication of its own evidentiary rules is insufficient to grant habeas relief.[70] To find a violation of due process based on state evidentiary rulings, the Court must find the rulings were so grossly prejudicial[71] that they "rendered the trial so fundamentally unfair that a denial of constitutional rights results."[72] The Court must examine the entire proceedings, including the strength of the evidence against Skaggs and instructions to the jury, to determine whether state evidentiary rulings resulted in fundamental unfairness.[73]

---

[68] *Darden*, 477 U.S. at 179, 182 (reasoning that the effect of a prosecutor's comments is reduced when "[m]uch of the objectionable content was invited by or was responsive to the . . . summation of the defense").

[69] Doc. 1 at 41.

[70] *Bullock v. Carver*, 297 F.3d 1036, 1055 (10th Cir. 2002) (*citing Estelle v. McGuire*, 502 U.S. 62, 72 (1991)).

[71] *Harris v. Poppel*, 411 F.3d 1189, 1198 (10th Cir. 2005) (quoting *Bullock*, 297 F.3d at 1055).

[72] *Id*. at 1197 (quoting *Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir. 2002)).

[73] *Id*.

### a. Admission of B.S.'s Prior Consistent Statements to Social Worker and Detectives (Ground Six)

Skaggs argues that B.S.'s and her mother's prior consistent statements may not be admitted to bolster their credibility or to act as independent evidence of his guilt. Skaggs claims the jury was bombarded with repeated, lengthy, and cumulative accounts of B.S.'s statements because the district court allowed the social worker to recite B.S.'s account of the events and how B.S.'s mother learned of the abuse. The district court also allowed the jury to hear B.S.'s statements to the detectives. The KCOA rejected this argument, finding no error because "admission of repetitious testimony regarding a child's descriptions of abuse is characteristic in the prosecution of child sex crimes and generally draws no objection."[74]

Since B.S. and her mother testified at trial, the jury was able to compare their respective statements and demeanor at trial to their prior statements. And in light of all the other evidence—medical evidence that B.S.'s genitalia showed characteristics consistent with sexual trauma;[75] circumstantial evidence that Skaggs used his computer to communicate with his ex-girlfriend contemporaneous with other incriminating online activity involving his internet username;[76] incriminating statements contained in email conversations between Skaggs and a convicted child sex offender;[77] and sexually explicit videos depicting child sexual abuse[78]—the Court finds allowing the prior consistent testimony did not render the trial fundamentally unfair.

---

[74] *State v. Skaggs*, No. 100,201, 2009 WL 2436671, at *5 (Kan. Ct. App. Aug. 7, 2009), *rev. denied* Sept. 7, 2010 (internal quotations omitted) (*citing State v. Kackley*, 92 P.3d 1128, 1135 (Kan. Ct. App. 2004)).

[75] R. Vol. X at 67–68, 73–76, 81, 84–85; R. Vol. XVII, Ex. 2 at 6, 8–9.

[76] R. Vol. XI at 342–53, 360–63, 446–88, 495–503, 512–13; R. Vol. XVII, Exs. 34–35, 38, 40, 42–51, 53–64, 70–73, 76–82.

[77] R. Vol. X at 273–92; R. Vol. XI at 509–22; R. Vol. XVII, Exs. 31, 93–95.

[78] R. Vol. XI at. 516–22; R. Vol. XVII, Ex. 93.

### b. Admission of Social Worker's Ensure-Accuracy Testimony (Ground Seven)

Skaggs maintains the trial court erred when it allowed the social worker, Penny Clodfelter, to testify that she was specifically trained on how to interview children and that she had developed a technique, which she employed on B.S., to "ensure accuracy." Skaggs argues that there was no way for him to adequately defend against the social worker's testimony that B.S.'s answers were not fabricated. The KCOA rejected this argument because Skaggs failed to make a contemporaneous objection. Additionally, the KCOA was not convinced that the challenged testimony was necessarily a comment on B.S.'s credibility, stating:

> Clodfelter did mention "accuracy," but in context this seems to have meant Clodfelter's concern that her understanding of B.S.'s account was accurate, not her "expert seal of approval" upon the child's account, as Skaggs claims on appeal. Of course, any ambiguity was never resolved because Skaggs did not object.
>
> Upon this record we find no error. Moreover, assuming there was error and considering the strength of the evidence against Skaggs, we conclude the challenged evidence did not affect Skaggs' substantial rights under K.S.A. 60-261 and also that, beyond a reasonable doubt, it had little if any likelihood of changing the result of the trial.[79]

The Court agrees with the above analysis and finds allowing the social worker's testimony did not render the trial fundamentally unfair considering the overwhelming evidence against Skaggs.

### c. Admission of Certain Items Found on Skaggs' Computer (Ground Nine)

Skaggs claims the district court erred in admitting State's Exhibits 38–40, 42–51, 57–64, 70–73, and 76–82.[80] He says the State presented these exhibits as evidence of its theory that he

---

[79] *Skaggs*, 2009 WL 2436671 at *6.

[80] The KCOA described these exhibits as follows:

was grooming B.S. to have sex with him to support the rape and aggravated criminal sodomy counts, but these exhibits had no relevance except to the counts of Sexual Exploitation of a Child. He points out that B.S. testified that she came across only one indecent image on his computer, which was not one of the challenged exhibits. He contends that because B.S. was never actually exposed to these exhibits, it was unduly prejudicial for the trial court to admit them. The Court rejects this argument because Skaggs has conveniently left out most of B.S.'s testimony regarding her experiences with Skaggs and computers. She testified that, "[h]e showed me little videos of older people having sex with kids[,]"[81] had her participate in chat conversations with unknown individuals about "[h]aving sex with Kevin[,]"[82] and also showed her a video of a girl having sex with a dog.[83]

---

State's Exhibit 38 . . . contained images of child sexual abuse taken from Skaggs' computer. It also listed numerous links to websites with names such as "Web's Youngest Women" and "All Teens Only Hardcore."

Exhibits 39, 40, 62-64, 70-73, and 76-82 were "screening shot[s]" or prints of what one would see on Skaggs' computer screen. For example, State's Exhibit 39 showed that a file among Skaggs' "Favorites" was entitled "Teen," and in that file were links to sites with names such as "New and Innocent," "Virgin's Party," and "Web Teenager." Other exhibits, such as State's Exhibit 76, included images of child sexual abuse along with a list of files. The balance of the exhibits, State's Exhibits 42-51, 53-55, and 57-61, were "chat logs" between franchise001, Skaggs' Internet user name, and other individuals designated by names such as "nudistchildrennnnnnnnnn," "lilgirlanddad," and "lilmisnaughtypanties323." These exhibits included text from franchise001 such as "i am very into kids" and "i want to meet a girl that wants to [have sexual intercourse with] our little girls." There were also questions to several correspondents whether they had children, an invitation to one to "come abuse our little girls," and a response to another who had said she would start her children "young" that it did not disgust him but rather "turns me on."

*Skaggs*, 2009 WL 2436671, at *7–8.

[81] R. Vol. XI at 393:21–22.

[82] *Id*. at 394:3–11.

[83] *Id*. at 394:18–395:7.

The challenged exhibits also helped establish the identity of the individual who accessed indecent material on both computers. Skaggs claimed his computer had been hacked by unknown person who planted viruses in his computer, or alternatively, that acquaintances who knew both his password and username had accessed the indecent material recovered from his computer. The Court agrees with the KCOA's analysis that these exhibits circumstantially prove Skaggs' identity and sexual interest in B.S:

> For example, franchise001 told "lilgirlanddad" that "i want to see f/11." At trial Skaggs testified to his assumption this meant "female eleven." B.S. was 11 years old at the time of the sexual assaults. Franchise001 made other representations on these chat logs . . . such as being 26 years of age (Skaggs' age at the time) and living in Leavenworth (Skaggs' city of residence).[84]

Likewise, the Court agrees with the KCOA's conclusion that these challenged exhibits were admissible to prove Skaggs preparation to commit the rape and criminal sodomy of B.S.[85] As the KCOA noted, the purpose behind Skaggs showing these materials to B.S. was made evident in the email thread between Skaggs and Daniel Lafountain, an individual whom Skaggs communicated with online.[86] Although male, Lafountain used the female alias of Cailynn Robertson. In State's Exhibit 31, Skaggs wrote: "Well...last night was a good breakthrough…and a setback…we made out all night…and then she let me finger her, but after a bit, she started crying and said it hurt too bad…and asked if i never would do it again ….so i am a bit stuck.[87] Lafountain wrote: "I don't have any 10yrold ones, just [] one of like late teens. I want to help this along! Cant wait:-D[.]"[88] Skaggs responded: "I have got the oldest kinda

---

[84] *Skaggs*, 2009 WL 2436671 at *9.

[85] *Id.* at 12–13.

[86] R. Vol. XVII, Ex. 31. This exhibit was admitted at trial without objection.

[87] *Id.* at 1.

[88] *Id.*

curious…the movies worked well…do you have one with about a 10 year old or so [having sexual intercourse] that lasts for a bit…if i can show her that I think I've got her wrapped up…"[89]  Skaggs later wrote:  "the vids you send will be helpful to her so she sees that it does happen, so she will feel good about it…."[90]

In determining whether the challenged exhibits were unduly prejudicial, the KCOA compared them to the unchallenged evidence.  The KCOA concluded the challenged exhibits, while probative, were obviously of much less prejudicial effect, noting:

> The unchallenged evidence included 10 videotapes of adults sexually abusing children, Skaggs describing in detail the sexual abuse of a child, and his intent to use the videotapes to groom his victim into participating in further sexual abuse.  The challenged evidence, however, included computer files denoted as "Web's Youngest Women" or "All Teens Only Hardcore" or single views of child sexual abuse or chat logs generally discussing the topic of child sexual abuse.[91]

Thus, even if the trial court erred in admitting these exhibits, that error was harmless.

As for the trial court's failure to give a limiting instruction, the KCOA likewise concluded it was harmless error because: 1) the prosecutor did not impermissibly argue that the challenged exhibits showed Skaggs' general propensity to commit child sexual assault; 2) the trial court instructed the jury to "decide each charge separately on the evidence and law applicable to it, uninfluenced by your decision as to any other charge[,]" which made it less likely the jury would treat the challenged exhibits as evidence of Skaggs' propensity to commit rape or sodomy; 3) the jury acquitted Skaggs on one count of anal sodomy, which strongly suggests the jury did not consider the challenged exhibits as evidence of his propensity to

---

[89] *Id.*

[90] *Id.* at 2.

[91] *State v. Skaggs*, No. 100,201, 2009 WL 2436671, at *13 (Kan. Ct. App. Aug. 7, 2009), *rev. denied* Sept. 7, 2010.

commit that act upon B.S.; and 4) the nonchallenged evidence supporting his convictions was overwhelming. The Court finds the KCOA's thorough analysis consistent with federal law and its conclusion supported by the record. Ground Nine thus fails to provide a basis for habeas relief.

### 4. Cumulative Error (Ground Ten)

Lastly, Skaggs asserts that the alleged cumulative errors entitle him to federal habeas relief. The cumulative-error doctrine applies in the federal habeas context only where there are two or more actual constitutional errors.[92] Because the Court has found no constitutional error, let alone multiple errors, Skaggs' cumulative error argument fails.

## IV. Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2254 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."[93] To satisfy this standard, the movant must demonstrate that "'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'"[94] While a movant is not required to demonstrate that his appeal will succeed to be entitled to a certificate of appealability, he must "prove something more than the absence of frivolity or the existence of mere good faith."[95] "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact,

---

[92] *Jackson v. Warrior*, 805 F.3d 940, 955 (10th Cir. 2015) (citing *Thacker v. Workman*, 678 F.3d 820, 849 (10th Cir. 2012)).

[93] 28 U.S.C. § 2253(c)(2).

[94] *Saiz v. Ortiz*, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke*, 542 U.S. 274, 282 (2004)).

[95] *Miller–El v. Cockrell*, 537 U.S. 322, 338 (2003) (internal citations and quotes omitted).

the statute forbids it."[96] The rulings made above are not the type that reasonable jurists could debate or would conclude were wrong. The Court thus declines to issue a certificate of appealability for this Order.

**IT IS THEREFORE ORDERED BY THE COURT** that the Motion for an Evidentiary Hearing on Grounds One and Three of Habeas Petition (Doc. 25) is **DENIED**.

**IT IS FURTHER ORDERED** that the State's request to substitute Sam Cline in place of Douglas Waddington as the respondent warden (Doc. 12, n.1) is **GRANTED**. The Court directs the Clerk's Office to make the substitution.

**IT IS FURTHER ORDERED** that Skaggs' Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED.**

**IT IS SO ORDERED.**

Dated: <u>August 30, 2018</u>

 S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE

---

[96] *Id.* at 336.